UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREDY GERMAN ACEVEDO DURAN,<br><br>Petitioner,<br><br>v.<br><br>SERGIO ALBARRAN, et al.,<br><br>Respondents. | No. 1:26-cv-01108-DC-CKD (HC)<br><br>ORDER GRANTING PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND DENYING PETITIONER'S APPLICATION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE<br><br>(Doc. Nos. 2, 9) |

This matter is before the court on Petitioner Fredy German Acevedo Duran's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant Petitioner's motion for a temporary restraining order and order his immediate release.

**BACKGROUND**

**A.    Factual Background**

Petitioner Fredy Acevedo Duran is a Salvadoran citizen currently detained by U.S. Immigration and Customs Enforcement ("ICE") in the California City Detention Center in California City, California. (Doc. No. 1 at ¶ 24.) Petitioner entered the United States without inspection on April 22, 2023. (*Id.*)

1

On March 24, 2024, Petitioner filed an asylum application with the United States Department of Homeland Security ("DHS"). (*Id.*) On December 18, 2025, Petitioner appeared for his asylum interview at the San Francisco Asylum Office. (*Id.*) Petitioner did not receive his asylum interview and instead was arrested by ICE officers. (*Id.*) Petitioner was issued a notice to appear in which he was charged as entering the United States without admission or inspection in violation of 8 U.S.C. § 1182(a)(6)(A)(i). (*Id.* at ¶ 25.)

Petitioner has been in custody since this arrest. (*Id.* at ¶ 24.) Petitioner has not received a bond hearing. (*Id.*) Petitioner alleges that DHS considers him ineligible for bond pursuant to the decision by the Board of Immigration Appeals ("BIA") in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), and current DHS policy. (*Id.* at ¶ 26.)

**B.    Procedural Background**

On February 9, 2026, Petitioner filed his petition for writ of habeas corpus asserting the following claims against Respondents Sergio Albarran, Todd M. Lyons, Kristi Noem, Pam Bondi, and Christopher Chestnut: (1) violation of the Immigration and Nationality Act ("INA") relating to Petitioner's detention under the mandatory detention requirement of 8 U.S.C. § 1225(b)(2); (2) violation of the INA in relation to Petitioner's class membership in *Maldonado Bautista v. Santacruz*, No. 25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, No. 25-cv-01873-SSS-BPM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); and (3) violation of Petitioner's constitutional right to due process in relation to his continued detention. (Doc. No. 1 at 15–16.) In his petition, Petitioner seeks an order (i) declaring that Petitioner's detention is unlawful; (ii) declaring that Respondents' refusal to provide Petitioner a bond hearing before a neutral adjudicator violates the INA; (iii) ordering Petitioner's immediate release, or in the alternative, ordering that Petitioner be provided a bond hearing before a neutral decision maker; and (iv) awarding Petitioner attorneys' fees and costs pursuant to the Equal Access to Justice Act. (*Id.* at 16–17.) On that same day, Petitioner filed the pending motion for a temporary restraining order in which he argues that his continued detention without a bond hearing violates the INA and his constitutional right to due process. (Doc. No. 2 at 12–22.) In his motion, Petitioner seeks an order ordering his immediate

1  release, or in the alternative, requiring a bond hearing before a neutral adjudicator.[1] (*Id.* at 29.)

2  On February 11, 2026, Respondents filed their opposition to Petitioner's motion for a
3  temporary restraining order. (Doc. No. 7.) Respondents argue that Petitioner improperly seeks to
4  adjudicate his claim through his motion for a temporary restraining order, and that Petitioner is
5  subject to mandatory immigration detention under 8 U.S.C. § 1225(b)(2). (Doc. No. 7 at 2–6.) On
6  that same day, Petitioner filed his reply thereto. (Doc. No. 8.)

7  On February 15, 2026, Petitioner filed an application for leave to file supplemental
8  evidence in support of his motion for a temporary restraining order. (Doc. No. 9.) Specifically,
9  Petitioner seeks to file "an affidavit from a retired immigration judge that directly corroborate[s]
10 Petitioner's argument that immigration judges are no longer functioning as neutral
11 decisionmakers."[2] (*Id.* at 1.) On February 20, 2026, Respondents filed objections to Petitioner's
12 request. (Doc. No. 10.)

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). To obtain injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter*

---

[1] Petitioner additionally argues that, because the immigration judges who conduct bond hearings are DHS employees, and because DHS has recently fired immigration judges "en masse" where DHS perceives that "their judicial philosophies did not align with the administration's priorities," the court should determine Petitioner's eligibility for bond rather than an immigration judge. (Doc. No. 2 at 23–24.) Because the court will order Petitioner's immediate release, Petitioner's argument in this regard is not addressed further in this order.

[2] Because the court does not consider Petitioner's argument regarding immigration judges' ability to consider Petitioner's bond, it will deny this request as moot.

factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F.Supp.3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.     Likelihood of Success on the Merits**

Petitioner contends that he is entitled to injunctive relief because he is entitled to, and has not been provided, a bond hearing under 8 U.S.C. § 1226(a).[3] (Doc. No. 2 at 12–17.) Respondents contend that Petitioner is an applicant for admission who is subject to mandatory detention under

/////
/////
/////
/////
/////
/////

---

[3] Petitioner also contends that he is entitled to relief as a member of the following class certified in *Maldonado Bautista*: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Maldonado Bautista*, 2025 WL 3713987 at *32. There, the district court vacated as unlawful a DHS policy declaring that all such class members are subject to mandatory detention pursuant to 8 U.S.C. § 1225(b). *Id.* Because the court will grant Petitioner's motion for a temporary restraining order on statutory grounds, it need not address the effect of his alleged membership in the *Maldonado Bautista* class on his motion.

8 U.S.C. § 1225(b)(2)(A), and therefore is not entitled to a bond hearing.[4] (Doc. No. 7 at 4–5.)

The complex statutory framework governing the detention and removal of inadmissible noncitizens in this country is at issue here. Sections 1225 and 1226 govern the detention of inadmissible noncitizens who have been placed in removal proceedings. 8 U.S.C. §§ 1225, 1226. Section 1226(a) is the "usual removal process" for inadmissible noncitizens. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). The noncitizen's removal commences with the filing of a Notice to Appear with the Immigration Court, initiated under 8 U.S.C. § 1229(a). *Ortiz Donis v. Chestnut*, No. 25-cv-01228-JLT-SAB, 2025 WL 2879514, at *3 (E.D. Cal. Oct. 9, 2025). The removal process provides for an evidentiary hearing before an immigration judge to allow the noncitizen to show they should not be removed. *Thuraissigiam*, 591 U.S. at 108. The noncitizen is permitted to apply for asylum if they would be persecuted if returned to their home country. *Id*. (citing 8 U.S. § 1229a(b)(4); 8 C.F.R. § 1240.11(c).) If asylum is not granted, and the noncitizen is ordered removed, they can appeal the order to the Board of Immigration Appeals.

---

[4] Respondents additionally argue that Petitioner's motion should be denied because "Petitioner seeks only to alter the status quo by issuing an expedited order that would grant him the ultimate relief h[e] seeks in his petition—while depriving Respondents (and this Court) a full and fair opportunity for briefing on the merits." (Doc. No. 7 at 3.) To support this argument, Respondents cite the decisions in *Mendez v. U.S. Immigr. and Customs Enf't*, No. 23-cv-00829-TLT, 2023 WL 2604585 (N.D. Cal. Mar. 15, 2023) and *Doe v. Bostock*, No. 24-cv-0326-JLR-SKV, 2023 WL 2861675 (W.D. Wash. June 6, 2024). However, the courts in both *Mendez* and *Doe* clarified that the moving parties sought relief that would upend, rather than preserve, the status quo. *Mendez*, 2023 WL 260485, at *3 ("Plaintiffs are not attempting to preserve the status quo or the relative positions of the parties pending a determination on the merits. Instead, Plaintiffs are seeking an injunction that would alter the status quo"); *Doe*, 2024 WL 2861675, at *2 ("Petitioner explicitly requests a departure from the status quo and indeed requests the ultimate relief she seeks in this action."). Here, Petitioner challenges the authority for his detention and seeks a temporary restraining order requiring his release from ICE detention while his claim is decided on the merits. (Doc. No. 2 at 29.) Numerous courts within this district have found that when a petitioner challenges the authority for his detention, the status quo is a return to the parties' conditions before the parties' last uncontested status, i.e. the petitioner's release before the challenged detention. (*Otilio B.F. v. Andrews*, No. 25-cv-01398-KES-EPG, 2025 WL 3152480, at *12 (E.D. Cal. Nov. 11, 2025) ("The last uncontested status would be the moment before petitioner was unlawfully detained"); *Morales Flores v. Lyons*, No. 25-cv-01640-TLN-EFB, 2025 WL 3552841, at *7 (E.D. Cal. Dec. 11, 2025) ("[R]elease is warranted to return to the status quo ante and remedy a constitutional violation"). Thus, by his motion for a temporary restraining order, Petitioner seeks an order preserving the status quo prior to the instant dispute, not a temporary restraining order altering the status quo as in *Mendez* and *Doe*.

*Id.* (citing 8 U.S. §§ 1229a(c)(5), 1252(a)).

Section 1226 provides a discretionary detention scheme while removal proceedings are pending. 8 U.S.C. § 1226. Specifically, during the pendency of removal proceedings, the government may continue to detain the individual or may release them on bond or conditional parole. 8 U.S.C. § 1226(a)(2)(A)-(B). When a person is apprehended under section 1226, an ICE officer makes an initial custody determination, and the noncitizen will be released upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)). If the noncitizen is detained under section 1226(a), they are entitled to a bond hearing. *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

As to noncitizens seeking admission into the United States, section 1225 provides for mandatory detention of certain individuals and, in some cases, expedited removal. 8 U.S.C. § 1225; *see also Ortiz Donis*, 2025 WL 2879514, at *4 ("While '§ 1226 applies to aliens already present in the United States,' U.S. immigration law also 'authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2),' a process that provides for expedited removal.") (citing *Jennings*, 583 U.S. at 303.) Section 1225(b)(2)(A) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.[5]

An applicant for admission is defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1).

---

[5] Subparagraph (B) of 8 U.S.C. § 1225(b)(2) sets forth exceptions to subparagraph (A). Subparagraph (C) of the same section addresses the [treatment] of [noncitizens] arriving from contiguous territory." 8 U.S.C. § 1225(b)(2)(C). Neither subparagraph appears to apply here.

Until recently, the United States Department of Homeland Security ("DHS") has "applied [section] 1226(a) and its discretionary release and review of detention to the vast majority of noncitizens allegedly in this country without valid documentation." *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *3 (N.D. Cal. Sep. 12, 2025). On July 8, 2025, DHS issued a memorandum to all employees of ICE stating that it had revisited its legal position on detention and release authorities and that section 1225 "is the applicable immigration detention authority for all applicants for admission." *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 3691938, at *4 (N.D. Cal. Dec. 19, 2025). In *Matter of Yajure Hurtado*, the BIA, without directly addressing the DHS memorandum, adopted this broader interpretation of "applicants for admission" and held that under this broader interpretation, all noncitizens who entered the United States without inspection are subject to mandatory detention under section 1225. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216. Following these developments, DHS began directing federal immigration officials to seek expedited removal of noncitizens pursuant to section 1225(b)(2). *See Garcia v. Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *5 (S.D. Cal. Sept. 3, 2025); *Salcedo Aceros*, 2025 WL 2637503, at *4.

In their opposition, Respondents reiterate the government's position that section 1225 applies broadly to all noncitizens, including Petitioner, who "entered the United States illegally without inspection." (Doc. No. 7 at 4–5) (citing *Buenrostro-Mendez v. Bondi*, --- F.4th ---, No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026)). However, Respondents "acknowledge that the weight of authority is not in their favor." (Doc. No. 7 at 5.) Indeed, Respondents' argument that section 1225 applies to all noncitizens who entered the United States without inspection has been consistently rejected by a majority of courts in this district and courts across the country. *See Valencia Zapata v. Kaiser,* No. 25-cv-07492-RFL, 2025 WL 2741654, at *10 (N.D. Cal. Sep. 26, 2025) (citing *Salcedo Aceros*, 2025 WL 2637503, at *8) (collecting cases). Instead, those courts have generally held that section 1226 rather than section 1225 is the appropriate section to apply in cases in which a noncitizen is already living in the United States. *See Morillo v. Albarran*, No. 25-cv-01533-DJC-AC, 2025 WL 3190899, at *4 (E.D. Cal. Nov. 15, 2025) ("As Petitioner has been present in the United States for 19 years . . . he is likely to succeed on the merits of his claim

1   that he is unlawfully detained under Section 1225(b)(2)'s mandatory detention provision.");
2   *Huerta v. Bondi*, No. 25-cv-00941-JLT-HBK, 2026 WL 366709, at *1 (E.D. Cal. Feb. 10, 2026)
3   (holding that the petitioner, who "entered the United States without inspection and has been
4   residing continuously here for more than 20 years without any contact with immigration
5   authorities . . . is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)"); *J.A.C.P. v.*
6   *Wofford*, No. 25-cv-01354-KES-SKO, 2025 WL 3013328 (E.D. Cal. Oct. 27, 2025) (same as to
7   petitioner who had resided in United States for four years before detention); *Bernardo Aquino v.*
8   *Larose*, No. 25-cv-02904-RSH-MMP, 2025 WL 3158676, at *3 (S.D. Cal. Nov. 12, 2025) ("The
9   overwhelming majority of courts to address the issue have agreed that Section 1226(a), rather
10  than the mandatory detention provision of Section 1225(b)(2)(A), applies to a noncitizen . . . who
11  has resided in the United States for many years.") (citing cases).

12       The court agrees with the majority view, which rejects the government's new
13  interpretation of section 1225 as the applicable immigration detention authority for all
14  inadmissible noncitizens. Therefore, Petitioner was entitled to a bond hearing under section
15  1226(a). *Matter of Adeniji*, 22 I. & N. Dec. 1102 (BIA Nov. 3, 1999) (holding that noncitizen
16  detained pursuant to section 1226(a) was entitled to the bond procedures provided in 8 C.F.R. §
17  236.1(c)(8) (1999)). Petitioner has demonstrated a likelihood of success on his claim that he has
18  been unlawfully denied a bond hearing in violation of 8 U.S.C. § 1226(a).

19  **B.**    **Irreparable Harm**

20       Petitioner will suffer irreparable harm in the absence of a temporary restraining order.
21  Broadly speaking, "[d]eprivation of physical liberty by detention constitutes irreparable harm."
22  *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citation omitted.) Further, the Ninth
23  Circuit has recognized the "irreparable harms imposed on anyone subject to immigration
24  detention" including "the economic burdens imposed on detainees and their families as a result of
25  detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

26       Therefore, the second *Winter* factor weighs in favor of granting Petitioner's request for
27  injunctive relief.
28  /////

**C.    Balance of the Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of the equities and public interest analyses merge when the government is the opposing party, as is the case in this action. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

"Just as the public has an interest in the orderly and efficient administration of this country's immigration laws, [ ] the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020) (internal quotation omitted). Though Respondents have an interest in enforcing immigration laws, Respondents cannot reasonably assert that the public and government will be harmed in any legally cognizable sense by being enjoined from detaining Petitioner in violation of the applicable law, which is the case here. This relief also benefits the public because "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022). Accordingly, the court finds that the balance of equities and public interest weigh in favor of injunctive relief and consequently, all four *Winter* factors weigh in favor of Petitioner.

**D.    Remedy**

In his motion for a temporary restraining order, Petitioner seeks his immediate release, or in the alternative, an individualized bond hearing before a neutral adjudicator pursuant to 8 U.S.C. § 1226(a). (Doc. No. 2 at 28–29.) In their opposition, Respondents argue that, should the court grant Petitioner injunctive relief, it should limit that relief to "a bond hearing under 8 U.S.C. § 1226(a) before an immigration judge (IJ), in which the Petitioner bears the burden to show he is not a danger to the community nor a flight risk." (Doc. No. 7 at 5) (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). Respondents argue that this "remedy would place Petitioner on equal footing with every other non-citizen who is eligible for a bond hearing under 8 U.S.C. § 1226(a)." (*Id.*)

As discussed above, the purpose of injunctive relief is to return the parties to the status quo ante, "which is 'not simply [] any situation before the filing of a lawsuit, but instead [] the

9

last uncontested status which preceded the pending controversy.'" *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1119 (E.D. Cal. Sep. 23, 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)). Here, Respondents contend that Petitioner was detained in December 2025 pursuant to section 1225(b)(2)(A) and have explicitly denied that he was detained under section 1226, or any other basis. (Doc. No. 7 at 4–5). Because Respondents do not assert any alternative basis for Petitioner's detention, and do not provide any extenuating circumstances that would warrant Petitioner's continued unlawful detention pending a bond hearing, the court finds that the appropriate relief is Petitioner's immediate release.[6] *Lepe*, 801 F. Supp. 3d at 1119.

**E.     Security**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief 'only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)).

---

[6] Respondents further argue that, should Petitioner be re-detained, Petitioner should bear the burden of showing that he is neither a flight risk nor a danger to the community to justify his release on bond. (Doc. No. 7 at 5.) The court has previously found that the government bears this burden where the noncitizen had previously been released from ICE detention, and therefore ICE had previously determined that the petitioner was neither a flight risk nor a risk to community safety. *See, e.g.*, *Labrador-Prato v. Noem,* 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); *Selis Tinoco v. Noem,* 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025). In those cases, the court found that due process required that the government bear the burden of justifying the petitioners' re-detention without bond because those petitioners maintained a liberty interest in their previous release from custody. *Id.* Here, on the other hand, the government has made no determination regarding Petitioner's flight or safety risk and has not previously released Petitioner from detention. (*See* Doc. No. 1.) Accordingly, because the court will release Petitioner on statutory rather than constitutional grounds, and because Petitioner does not assert any argument to the contrary, the court finds that the regulatory protections provided in 8 C.F.R. § 1236.1(c)(8) are the proper standard for Petitioner's initial bond hearing, should he be detained at some later point following his release pursuant to this order. *See Matter of Adeniji*, 22 I. & N. Dec. 1102 at 1112 (citing 8 C.F.R. § 236.1(c)(8)). Other courts in the Ninth Circuit have recognized this distinction in the burden of proof as to claims predicated on constitutional relief, versus claims predicated on statutory relief. *See, e.g., Zaitsev v. Warden, Adelanto ICE Processing Center*, No. 26-cv-00454-SPG-AS, 2026 WL 391429, at *11 (C.D. Cal. Feb. 9, 2026) (noting that where immigration judge placed the burden of proof on the government in 1226(a) hearing, "the [immigration judge] held the government to a higher standard than set out in BIA regulations, *see* 8 C.F.R. § 1236.1(c)(8), and the same standard or higher than what the Constitution requires.").

10

"Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id.* (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Petitioner argues that no security should issue because "it is unlikely any harm will come to Respondents as a result of a grant of temporary relief and Respondents will incur negligible or zero financial costs." (Doc. No. 2 at 28.)

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe*, 801 F. Supp. 3d at 1120; *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**CONCLUSION**

For the reasons stated above:

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) is GRANTED as follows:

   a. Respondents shall immediately release Petitioner from their custody;

   b. Should Respondents attempt to re-detain Petitioner, they shall provide him with a bond hearing pursuant to 8 C.F.R. 1236.1(c)(8) at which Petitioner shall bear the burden of showing that he is not a flight risk or a risk to community safety;

2. Petitioner's request to file supplemental evidence (Doc. No. 9) is DENIED as moot; and

/////
/////
/////
/////
/////
/////

3. This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: __**February 26, 2026**__

Dena Coggins
United States District Judge